ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| JOSÉ DOMINGO SOTO PACHECO<br><br>Apelante<br><br>v.<br><br>JORGE MELÉNDEZ, DORKA CRUZ Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES QUE ÉSTOS COMPONEN<br><br>Apelada | KLAN202400784 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Mayagüez<br><br>Caso Núm. MZ2021CV00863<br><br>Sobre: Interdicto Posesorio |
|---|---|---|

Panel integrado por su presidente el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de noviembre de 2024.

**I.**

El 8 de julio de 2021 el señor José Domingo Soto Pacheco presentó una *Petición de Injunction Posesorio* en contra del señor Jorge Meléndez, Dorka Cruz y la Sociedad Legal de Gananciales compuesta por ambos (esposos Melendez-Cruz). Alegó ser dueño de la siguiente propiedad:

A. Descripción Registral

URBANA: Solar agrupado marcado con los números nueve y diez guión "M" (9 y 10-M) de la Urbanización Sultana. Barrio Guanajibo del término municipal de Mayagüez, con cabida de MIL NOVECIENTOS CINCUENTA Y SIETE PUNTO VEINTE METROS [CUADRADOS] (1,957.20 m.c.). Colinda por el NORTE, con Miguel Torres; por el SUR, con la calle Alhambra; por el ESTE, con el solar número once (11) de la misma urbanización; por el OESTE; con el solar número ocho (8).

Enclava y le pertenece una estructura de tres plantas edificada en hormigón destinada a vivienda para una sola familia.

Indicó haber adquirido la propiedad a través de un proceso de agrupación efectuado mediante la Escritura 29 de AGRUPACIÓN Y

Número Identificador

SEN2024_____

HOGAR SEGURO otorgada el 23 de marzo de 2018. Las fincas agrupadas mediante la referida Escritura tenían la siguiente descripción:

### B. SOLAR M-10

i. Descripción Registral

Rústica: Solar marcado con el Número Diez guión "M" (10-M) de la Urbanización Sultana con frente a la calle Alhambra de Mayagüez, Puerto Rico, que radica en el Barrio Guanajibo con cabida de MIL DIECIOCHO PUNTO CUARENTA Y CUATRO (1,018.44) METROS CUADRADOS, Colinda por el NORTE, con Miguel Torres; por el SUR, con la calle Alhambra, por el ESTE, con el solar once (11) de la misma urbanización, por el OESTE con el solar número nueve (9). Enclava y le pertenece una estructura de tres plantas edificada en hormigón destinada a vivienda para una sola familia. Consta inscrita al folio doscientos setenta y cuatro (274) del tomo mil ciento noventa y siete (1,197) de Mayagüez, finca número treinta y siete mil trescientos cuarenta (37,340), inscripción primera del Registro de la Propiedad de Mayagüez.

Número de catastro 29-259-067-911-46-001.

ii. Fue segregada de la finca número 28,281, que está inscrita al folio 33 del Tomo 951 de Mayagüez, mediante la escritura 46 de 30 de mayo de 1990 ante la Notario Susan Báez Dixon.

iii. Adquirió la propiedad antes descrita, según la escritura número cuarenta y siete (47) sobre Compraventa del día treinta (30) de marzo de mil novecientos noventa (1990), en Mayagüez, Puerto Rico, ante la Notario Público Susan Báez Dixon, inscrita según detallado anteriormente.

### C. Solar M-9

i. Descripción Registral
URBANA: Solar número nueve (9) del Bloque M de la Urbanización Residencial Sultana del término municipal de Mayagüez, Puerto Rico. Tiene una cabida superficial de Novecientos Treinta y Ocho punto Setenta y Seis Metros Cuadrados (938.76 m.c.). Colinda por el Norte, en sesenta y tres punto noventicuatro (63.94) metros, con el Solar ocho (8) del Bloque M: por el Sur, sesenta y tres punto ochenta y nueve (63.89) metros, con el Solar diez (10) del Bloque M: por el Este, en diez punto cero cero (10.00) metros con terrenos de Miguel A. Torres, hoy Rafael Pagán del Toro; y por el OESTE, en diecinueve punto cuarenta y seis (19.46) metros, con la Calle nueve (9) del Residencial Sultana. Consta inscrita en el

Registro de la Propiedad, sección de Mayagüez, al folio cincuenta y ocho (58) del tomo mil ciento cuarenta y cinco (1,145) de Mayagüez, finca número treinta y cuatro mil ochocientos noventa y cinco (34,895).

Número de catastro 29-259-067-906-80-000.

ii. Fue segregada de la finca número 28,281, que está inscrita al folio 33 del Tomo 951 de Mayagüez, mediante la escritura 27 de 8 de julio de 1987 ante el Notario Fernando Bayrón Toro.

iii. Adquirió la propiedad antes descrita, según la escritura número veintiuno (21), otorgada en Mayagüez, Puerto Rico, el día dieciséis (16) de marzo de dos mil dieciocho (2018), ante la Notario Público Tania E. Santiago Caro, la cual está presentada al asiento 2018-023543-MY01, pendiente de inscripción.

Expuso que los esposos Melendez-Cruz eran dueños de la siguiente propiedad:

**I.** Descripción Registral

RUSTICA: Parcela de terreno ubicado en la Urbanización residencial Sultana del Barrio Guanajibo del término municipal de Mayagüez, con una cabida superficial de cuatro mil ciento dos metros cuadrados con cuatrocientos setenta y uno de otro (4,102.471). Colinda por el NORTE, con Luis Pérez Lebrón, solar M cuatro (M 4) de la Urbanización Sultana; por el SUR, con la calle nueve (9) Alhambra y con el solar M trece (M 13); por el ESTE; con Miguel A. Torres, hoy Santos Alonso; y por el OESTE; con la calle nueve (9) Alhambra de la Urbanización.

Inscrita al Tomo novecientos cincuenta y uno (951) del Folio treinta y tres (33), Finca número veintiocho mil doscientos ochenta y uno (28,281) de Mayagüez, Registro de la Propiedad de Mayagüez.

CATASTRO NÚMERO: dos cinco nueve guión cero siete siete guión nueve uno uno guión cero dos guión cero cero cero (259-077-911-02-000).

La dirección física residencial del inmueble es: Urb. Sultana, Calle Alhambra, Mayagüez, Puerto Rico 00681. Planteó que el referido predio es el remanente de la finca número 28,281, luego de realizarse varias segregaciones entre las cuales se encuentran los solares M-9 y M-10. Agregó que dicho predio incluía un solar identificado en planos como #11, y parte de la Calle Alhambra de la

Urbanización, los cuales estableció nunca habían sido segregados. **Sin embargo, la porción de la calle Alhambra y el redondel de viraje de dicha calle enclavan en el predio de los esposos Melendez-Cruz.** La antecesora en título de las propiedades de ambas partes era la corporación The Highlanders Corporation y esta fue la entidad responsable de la construcción de la calle, realizada antes de segregarse los solares del Sr. Soto Pacheco.

En cuanto a la posesión de la propiedad, afirmó que desde que adquirió el solar Número 10 ha estado en su posesión y ha ocupado el predio de terreno de 140.4131 metros cuadrados, los cuales especificó estaban localizados dentro del terreno que los esposos Melendez-Cruz reclaman como suyo. La descripción dicha porción de terreno es la siguiente:

> Predio de terreno con una cabida de 140.4131 de forma trapezoidal que colinda al Norte, en una distancia de 2.3719 metros con muro que separa al finca de la Urbanización Villa Sultanita; al Sur, en una distancia de 5.1070 metros, con el redondel de viraje de la Calles Alhambra; al Este, en una distancia de 38.3400 metros con el terreno propiedad de la parte demandada, Jorge Meléndez y Dorka Cruz, y al Oeste, en una distancia de 40.1024 metros, con el resto del solar número 10 propiedad de José Soto Pacheco.

Luego de varias instancias procesales, el 3 de enero de 2022, el Sr. Soto Pacheco, modificó las alegaciones de la *Demanda* para incluir la acción de deslinde y amojonamiento. En la *Demanda Enmendada* expuso que conforme a la descripción registral de la finca M-10, esta tenía una cabida de 1,018.44 metros cuadrados. No obstante, aseveró que existía una controversia sobre los puntos de colindancia entre los solares números 10, perteneciente a él, y el redondel del área marcada como calle y el Solar Número 11.

Según narró, la controversia sobre el terreno surgió en septiembre de 2020 cuando el agrimensor Héctor González le entregó una sección de un plano en el cual indicaba las colindancias. Indicó que, según dicho plano, la línea que discurre

del punto 162 al punto 169 correspondía a la línea de colindancia OESTE que le pertenecía. Sin embargo, los esposos Meléndez-Cruz habían marcado el punto 169, la intersección de la línea de colindancia, con un muro de contención al NORTE del solar #10. Puntualizó que la línea que discurre del punto 170 al punto 172 era la colindancia OESTE del predio en su posesión.

En atención a todo lo antes expuesto, el Sr. Soto Pacheco solicitó al tribunal: 1) Determinar que la colindancia Oeste del predio perteneciente a su persona era la línea que discurría del punto 162 al punto 169 o en la alternativa establecer que este había adquirido por usucapión el predio; 2) Ordenar el deslinde y amojonamiento de la colindancia entre los predios conforme al plano preparado por el Agrimensor Roberto Robert; 3) Ordenar al Registrador de la Propiedad modificar la descripción registral del predio en concordancia con la realidad fáctica.

En respuesta, el 20 de abril de 2022, los esposos Melendez-Cruz presentaron *Contestación a la Demanda Enmendada*. Establecieron que, a su entender, la causa de acción pertinente a los hechos planteados era la acción deslinde y no la acción de interdicto posesorio. Señalaron que, desde el 2018 han hecho gestiones afirmativas para la compra del solar objeto de controversia y que el Sr. Soto Pacheco tuvo pleno conocimiento de lo anterior y participó de múltiples conversaciones con ellos al respecto. Particularizaron que, el 7 de agosto de 2020 adquirieron mediante escritura la propiedad inmueble y, consecuentemente, el 12 de agosto del mismo año, le solicitaron al Sr. Soto Pacheco que removiera la carpa que tenía localizada en la carretera que impedía la entrada hacia el terreno.

El 8 de septiembre de 2020 los esposos Meléndez-Cruz advinieron en conocimiento que el Sr. Soto Pacheco había ubicado la carpa que previamente estaba localizada en la calle Alhambra,

dentro de la propiedad de estos y que allí estacionaba un vehículo de motor. Ante la negativa del Sr. Soto Pacheco de remover la carpa y el vehículo, los esposos Meléndez-Cruz presentaron una querella al amparo de la Ley 140.[1] Como resultado de dicho pleito, el 29 de junio de 2021, el Tribunal de Primera Instancia ordenó al Sr. Soto Pacheco remover la carpa del terreno en controversia y a abstenerse de estacionar el vehículo en el terreno.

Luego de varias instancias procesales, el 8 de marzo de 2023, se celebró una vista de Informe de Conferencia con Antelación a Juicio. En ella, se señaló el Juicio en su Fondo para los días 13 y 14 de diciembre y el 8 de enero de 2024. Posteriormente, el 19 de julio de 2024 el Tribunal de Primera Instancia emitió la *Sentencia* que nos ocupa. En la misma, declaró No Ha Lugar la *Demanda Enmendada* y desglosó (80) determinaciones de hecho Consecuentemente, desestimó la acción de deslinde y prescripción adquisitiva instada. Ordenó a demarcar y reestablecer las colindancias entre los solares 10 y 11 conforme a la prueba presentada y admitida en evidencia en un término de (30) días, a partir de la fecha en que la sentencia adviniera final y firme. Finalmente, le impuso al Sr. Soto Pacheco $4,000.00 por concepto de honorarios de abogado y costas.

Inconforme, el 20 de agosto de 2024, el Sr. Soto Pacheco acudió ante nos mediante *Escrito de Apelación.* Plantea:

> Erró el Honorable Tribunal al no permitir se presentara en evidencia el plano firmado por el Ingeniero Fidel Pino Cros que obra en el Registro de la Propiedad cuyo plano muestra gráficamente los puntos de colindancias del solar del demandante con el remanente de la finca y por dicho error no se consideró evidencia determinante que conllevaría una sentencia a favor de la parte demandante.

> Erró el Honorable Tribunal al no permitir testimonio sobre las manifestaciones hechas por el Ing. Fidel Pino Cros quien en los momentos relevantes era el presidente

---

[1] Caso número Q2021-148.

de la corporación que efectuó el desarrollo de la urbanización.

El error del [H]onorable Tribunal de excluir la evidencia admisible y relevante relacionada en los planteamientos precedentes conlleva la revocación de la Sentencia dictada y la devolución del caso para la celebración de un nuevo juicio en [el] que se admita dicha evidencia.

El 18 de septiembre de 2024, los esposos Melendez-Cruz presentaron su correspondiente alegato en oposición. Contando con las comparecencias de las partes, el Derecho y jurisprudencia aplicable, procedemos a resolver.

## II.

La acción de deslinde, como acción protectora de dominio,[2] consiste en la fijación de los límites materiales de una fincan que están confundidos.[3] La acción de deslinde tiene dos características distintivas, estas son: (1) pretende individualizar los inmuebles, sin determinar directamente quién es el dueño, y (2) mediante esta acción no se discute la validez ni la eficacia de los títulos, sino que se dirime su interpretación.[4]

El deslinde puede efectuarse por cualquier procedimiento técnico de agrimensura, con citación de los propietarios colindantes.[5] Estos últimos deben presentarse, por sí mismos o por medio de representantes, en el lugar, el día y la hora señalada.[6] Asimismo, deben traer consigo los títulos suficientes de propiedad que amparen su derecho. A falta de título suficiente, el deslinde puede efectuarse por lo que resulta de la posesión en que estén los colindantes.[7] Constituye título suficiente aquel que provea de forma adecuada, la cabida de la finca y los restantes datos necesarios para su deslinde y amojonamiento.[8]

---

[2] *Ramírez Quiñones* v. *Soto Padilla*, 168 DPR 142, 157 (2006).
[3] COD. CIV. ART. 828, 31 LPRA § 8131.
[4] *Ramírez Quiñones*, 160 DPR en la pág. 159.
[5] *Id.*, § 8135.
[6] *Id.*
[7] *Id.*
[8] *Id.*

De otro lado, el *amojonamiento* es el acto mediante el cual se colocan los signos estables que marcan los límites establecidos.[9]

### III.

Por estar íntimamente relacionados procedemos a discutir los señalamientos de error de forma conjunta.

El Sr. Soto Pacheco impugna la exclusión de evidencia hecha por el foro primario del plano firmado por el Ing. Pino Cros, así como la exclusión del testimonio que ofreció en el juicio, junto con el del Sr. Rodríguez Marty.  No le asiste la razón. Veamos por qué.

### A.

Para que la prueba pueda ser admisible en evidencia debe ser pertinente.[10] La evidencia pertinente es aquella que tiende a aumentar o disminuir la probabilidad de la existencia de un hecho que tienen consecuencias para la adjudicación de la acción.[11]

Como regla general, la evidencia pertinente es admisible en evidencia.[12] Sin embargo, para que la evidencia pertinente sea admitida, la misma debe ser autenticada, a menos que le aplique alguna de las excepciones establecidas por la Reglas de Evidencia. En lo aquí pertinente, la Regla 901(a) de Evidencia establece que, "el requisito de autenticación o identificación como una condición previa a la admisibilidad se satisface con la presentación de evidencia suficiente para sostener una determinación de que la materia en cuestión es lo que la persona proponente sostiene". [13] La mencionada Regla ofrece como ejemplo de autenticación o identificación el testimonio por testigo con conocimiento de que una cosa es lo que se alega.[14]

---

[9] *Id.*
[10] R. EVID. 402, 32 LPRA Ap. VI.
[11] *Pueblo* v. *Santiago Irizarry*, 198 DPR 35, 43 (2017).
[12] *Id.*, pág. 44.
[13] 32 LPRA Ap. VI, R. 901.
[14] *Id.*

En esencia, a través de la autenticación se debe establecer que la evidencia es lo que el proponente alega que es.[15] Asimismo, la referida Regla establece que la categoría del testigo con conocimiento es bastante amplia, ya que puede incluir a la persona que estaba presente cuando se escribió o firmó el documento, el testigo que reconoce que la fotografía representa adecuadamente el lugar en relación con el cual va a testificar, y el testigo que custodió en determinado momento la evidencia, entre otros.[16]

**B.**

Según surge de la *Minuta* de la Continuación del Juicio en su Fondo de 14 de diciembre de 2023,[17] el **Exhibit 1—(Plot Plan o Plano de Mensura radicado en el Registro de la Propiedad)** ofrecido por el Sr. Soto Pacheco fue admitido por el tribunal en evidencia de manera condicionada a que se sometiera una copia certificada en el expediente. En atención a esto, le concedió al Sr. Soto Pacheco cinco (5) días, a partir de la finalización del juicio, para someter el mismo documento presentado en Sala, **debidamente certificado por el Registro de la Propiedad y en cumplimiento con las Reglas de Evidencia**. Le advirtió que, de no someterlo debidamente, no se tomarían en consideración las preguntas y contestaciones realizadas a base de esa prueba.

El Sr. Soto Pacheco no cumplió con lo ordenado por el Tribunal en el término dispuesto y el 19 de diciembre de 2023, presentó una *Solicitud de Reconsideración y Oferta de Prueba*.[18] Solicitó que se admitiera el documento marcado como (***Exhibit 1— Plot Plan o Plan de Mensura radicado en el Registro de la Propiedad***), ya que el mismo había sido debidamente autenticado por el Agr. Roberto Roberts. Explicó que le resultaba imposible

---

[15] ERNESTO CHIESA APONTE, REGLAS DE EVIDENCIA COMENTADAS 345 (2016).
[16] *Id.*, pág. 348.
[17] Apéndice del recurso, págs. 41-43.
[18] *Id.*, págs. 44-51.

cumplir con lo ordenado por el tribunal, toda vez que conforme a la Ley Hipotecaria el Registro de la Propiedad, estaba impedido de expedir copias y certificaciones sobre planos.

También propuso que se le permitiera hacer un ofrecimiento de prueba sobre el testimonio de señor Radamés Rodríguez Marty y sobre su propio testimonio relacionado a las manifestaciones hechas por el Ing. Fidel Pino Cros, cuando fungió como presidente de la corporación encargada de hacer el desarrollo y la venta de los solares. Aseveró que las manifestaciones que este le hizo constituían una admisión de parte.

En la continuación del juicio en su fondo el 8 de enero de 2024, el tribunal, al considerar la moción de reconsideración y oferta de prueba presentada por el Sr. Soto Pacheco, expresó lo siguiente:

> El licenciado Muñiz expresa que el Tribunal permitió la oferta de prueba y cumplió con la *Regla 104 de Evidencia* y la parte pudo explicar el valor probatorio. Cita las *Reglas de Evidencia 1002 Regla sobre el contenido de un escrito, grabación o fotografía y la 1004 Regla de evidencia secundaria.* Realiza planteamientos en cuanto a la solicitud de reconsideración del demandante ante la prueba ofrecida y no admitida. **Reitera que la Identificación 1 de la parte demandante no le dio certeza al Tribunal que el documento pertenezca al Registro de la Propiedad y el perito, Roberto Roberts, testificó que no utilizó ningún documento de dicha agencia.**[19]

De esta forma el Tribunal mantuvo su determinación sobre el *Exhibit 1—(Plot Plan o Plano de Mensura)* y expuso que las dos ofertas de prueba en cuanto a los testimonios del Sr. Rodríguez Marty y el Sr. Soto Pacheco no serían admitidas en evidencia.[20] No erró al así resolver.

El señor Soto Pacheco incumplió con los requisitos necesarios para autenticar propiamente el Plano de Mensura firmado por el Ing. Pino Cros. Tampoco fue debidamente autenticado con la declaración

---

[19] Entrada 105 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[20] *Id.*

hecha por el Agr. Roberto Roberts. Aunque un testigo con conocimiento personal es parte de los ejemplos incorporados en la Regla de Evidencia como método de autenticación, el conocimiento debe provenir de la presencia de la persona cuando se escribió o firmó el documento. De igual forma se considera personal, entre otros, el conocimiento demostrado al reconocer que la fotografía representa adecuadamente el lugar en relación con el cual va a testificar, o del que se infiere por ser el testigo custodió la evidencia en determinado momento.

En este caso, el testigo con el que el Sr. Soto Pacheco pretendió autenticar el plano, como requisito previo a su admisibilidad, no tenía el conocimiento personal que le permitiera autenticarlo confiablemente. El Sr. Roberts ofreció su testimonio como perito y como tal, tampoco cumplió con los requerimientos de las reglas. En tal sentido, la Regla 703 de las de Evidencia dispone:

a) Toda persona está calificada para declarar como testigo pericial si posee especial conocimiento, destreza, experiencia, adiestramiento o instrucción suficiente para calificarla como experta o perita en el asunto sobre el cual habrá de prestar testimonio. Si hubiere objeción de parte, dicho especial conocimiento, destreza, adiestramiento o instrucción deberá ser probado antes de que la persona testigo pueda declarar como perita.

b) El especial conocimiento, destreza, experiencia, adiestramiento o instrucción de una persona que es testigo pericial podrá ser probado por cualquier evidencia admisible, incluyendo su propio testimonio.

c) La estipulación sobre la calificación de una persona perita no es impedimento para que las partes puedan presentar prueba sobre el valor probatorio del testimonio pericial.[21]

La precitada Regla adopta una norma liberal sobre la capacidad para declarar como perito.[22] Cónsono con lo anterior, jurisprudencialmente se ha determinado que el valor probatorio

---

[21] 32 LPRA Ap. VI, R. 703.
[22] *Dye Tex P.R., Inc.* v. *Royal Ins. Co.*, P.R., 150 DPR 658 (2000).

pericial depende de varios factores, entre los que se destacan los siguientes: 1) las cualificaciones del perito; 2) la solidez de las bases de su testimonio; 3) la confiabilidad de la ciencia o técnica subyacente y; 4) la parcialidad del perito.[23] El valor probatorio de la prueba testifical depende en gran medida de las calificaciones del perito. Los tribunales tienen amplia discreción en la apreciación de la prueba pericial pudiendo aun adoptar su propio criterio en la apreciación o evaluación de esta, y hasta descartarle, aunque resulte técnicamente incorrecta.[24]

De manera que el valor probatorio del testimonio del Sr. Roberts estaba sujeto, entre otras cosas, a que estuviese basado en hechos o información suficiente, a que fuese producto de métodos confiables, a que fuese aceptado generalmente por la comunidad científica, a las calificaciones o credenciales de la persona testigo y a la parcialidad del perito de conformidad con los factores establecidos en la Regla 403 de Evidencia.

De otra parte, el Sr. Soto Pacheco impugna la exclusión hecha por el Foro primario del testimonio del Sr. Rodríguez Marty, vecino de la propiedad, así como la exclusión de su propio testimonio. Aduce que ambos testimonios abundarían sobre unas alegadas manifestaciones hechas por el Ing. Fidel Pino Cros respecto al *Exhibit 1*—Plot Plan o Plano de Mensura, firmado por este último con las colindancias establecidas. Arguye que estas manifestaciones constituyeron una admisión de parte por lo procedía su admisión como exención a norma general de exclusión de la prueba de referencia. Tampoco tiene razón.

La prueba de referencia se define como la declaración que no sea la que la persona declarante hace en el juicio o vista que se

---

[23] *Id.*, pág. 664.
[24] *Id.*

ofrece en evidencia para probar la verdad de lo aseverado.[25] Por lo tanto, para que la prueba sea de referencia y le aplique la regla de exclusión, tiene que ser: 1) una declaración extrajudicial, 2) susceptible de ser cierta o falsa -- aseveración--, 3) que es ofrecida en el juicio para que se admita en evidencia (*exhibit*), y 4) con el propósito de probar la verdad de lo aseverado. Cualquier declaración que no tenga alguna de estas cualidades, no es prueba de referencia y, por tanto, no le aplica la regla de exclusión.

La exclusión de la prueba de referencia, según definida en la Regla 801 de Evidencia, obedece a que por su naturaleza no están las condiciones ideales—juramento o afirmación, presencia o inmediatez y la confrontación--, que exige el derecho de la prueba para apreciar, evaluar o adjudicar la credibilidad de los testigos.[26] De ordinario, las declaraciones previas al testimonio en corte se hacen sin que previamente se jure o afirme decir la verdad.[27] Falta además la presencia del juzgador de los hechos para apreciar el comportamiento del declarante mientras emite su declaración. Más importante aún, es virtualmente imposible detectar que nivel o grado de sinceridad se tuvo al hacer las declaraciones.[28] En tanto y en cuanto la parte contra la quien se ofrece la prueba de referencia no tiene oportunidad de confrontar al declarante en el juicio, esta privada de cotejar o demostrar los riesgos de falta de confiabilidad inherentes a dicha prueba.

Surge de expediente ante nos que las manifestaciones del ingeniero constituyen prueba de referencia inadmisible al traerse para probar la verdad del contenido radicado en el Registro de la Propiedad. Los testimonios se ofrecieron con el propósito de probar

---

[25] 32 LPRA Ap. VI, R. 801.
[26] ENRIQUE VÉLEZ RODRÍGUEZ, LA PRUEBA DE REFERENCIA Y SUS EXCEPCIONES, 8 (2018).
[27] Estos constituyen formalidades y solemnidades típicas de los procesos adjudicativos que, al menos en teoría, disuaden el engaño y la mentira.
[28] Vélez, *supra* nota 26, en las págs. 12-16.

que el Ing. Pino Cros fue la persona encargada de preparar el plano y que, en efecto, fue el responsable de establecer la colindancia entre los predios. Este ingeniero falleció en el año 1999, por lo tanto, no es posible contrainterrogarlo sobre su alegada declaración extrajudicial.

Contrario a lo argumentado por la parte, las referidas manifestaciones hechas no constituyen una admisión de parte, porque no cumple con la regla, sino, constituyen prueba de referencia inadmisible. Su exclusión no constituyó un error que amerite análisis ulterior bajo las Reglas 104 y 105 de Evidencia.[29]

### IV.

Por los fundamentos expuestos, se *confirma* la Sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[29] 32 LPRA Ap. VI, RR. 104 y 105.